JOHN BILANKOV, APPELLANT, v. BOARD OF REVIEW, DIVISION OF UNEMPLOYMENT & DISABILITY INSURANCE, DEPARTMENT OF LABOR & INDUSTRY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted June 14, 1983—Decided June 28, 1983.

Before Judges MICHELS, PRESSLER and TRAUTWEIN.

*James F. Ryan, Jr.,* attorney for appellant.

*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney for respondent (*Michael S. Bokar,* Deputy Attorney General, of counsel; *Donald M. Palombi,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

TRAUTWEIN, J.A.D.

Plaintiff's application for unemployment benefits was rejected by a local claims office on the ground that he had not accumulated sufficient earnings during his base year. This determination was later upheld by the Appeal Tribunal and by the Board of Review. On this appeal he maintains that a monthly displacement allowance he received pursuant to the Regional Rail

Reorganization Act of 1973, 87 *Stat.* 986; 45 *U.S.C.A.* § 701 *et seq.* (1974) (the "act"), constitutes earned "remuneration" within the contemplation of our unemployment compensation law and that he therefore accumulated sufficient earnings during his base year to qualify for benefits. We agree.

Plaintiff was employed as a driver by Penn Truck Lines of Philadelphia ("Penn") for 31 years until July 1, 1977, at which time he was "technically laid off" because Penn had no work for him. Thereafter, he began collecting on a monthly basis a "displacement allowance" from Penn as provided in both his local union contract and the act. After receiving his last check on July 24, 1981 he was informed by his congressman that the applicable portions of the act had been repealed as of August 31, 1981. On November 6, 1981 he filed a claim for unemployment compensation benefits with a local claims office and shortly thereafter his claim was determined to be invalid on the ground that he lacked sufficient base weeks or sufficient base year wages to establish a valid claim. Thereafter he appealed this decision to the Appeal Tribunal, which, after a hearing on December 18, 1981, determined that his claim was invalid under *N.J.S.A.* 43:21–4(e) on the ground that the monthly displacement allowance he received from Penn during his base year did not qualify as "remuneration" and thus that he did not have sufficient base year earnings as required by the statute. This decision was appealed to the Board of Review which, in a decision dated January 26, 1982, affirmed the decision of the Appeal Tribunal on the basis of the record below. This appeal followed.

A brief discussion of the act will serve to place the issue presented in context. Congress recognized that rail service in the northeast and midwest regions of the United States was inadequate and that many of the area railroads were bankrupt and in need of reorganization. 45 *U.S.C.A.* § 701(a)(1). One of the purposes of the act, therefore, was "the reorganization of railroads in this region into an economically viable system capable of providing adequate and efficient rail service to the

region." 45 *U.S.C.A.* § 701(b)(2). In furtherance of this goal the United States Railway Association (the "Association"), 45 *U.S.C.A.* § 711, and the Consolidated Rail Corporation (the "Corporation"), 45 *U.S.C.A.* § 741, were established. The Association was authorized to prepare for submission to Congress a "final system plan" designed to implement the goals set forth in the act. 45 *U.S.C.A.* §§ 716–717. The Corporation was empowered to acquire rail properties designated in the final system plan; to rehabilitate, improve and modernize such properties, and to maintain adequate and efficient services. 45 *U.S.C.A.* § 742. The act further provided for the takeover of insolvent railroads by financially stable lines pursuant to the final system plan. 45 *U.S.C.A.* § 716(c)(1)(B).

To protect railroad employees affected by action taken pursuant to the final system plan, the act created a class of "protected employees" defined as "any employee of ... an acquiring or selling railroad who is adversely affected by a transaction ... who ... has not reached age 65 on the effective date of this Act." 45 *U.S.C.A.* § 771(3). Under the act "[a] protected employee whose employment is governed by a collective bargaining agreement will not, except as explicitly provided in this title ... during the period in which he is entitled to protection, be placed in a worse position with respect to compensation, fringe benefits, rules, working conditions, and rights and privileges pertaining thereto ..." 45 *U.S.C.A.* § 775(a). To effectuate this goal, a "monthly displacement allowance" was created, based on the rate of pay of the employee. 45 *U.S.C.A.* § 775(b)(1)(A). However, in no event was the displacement allowance to exceed $2,500 in any one month. 45 *U.S.C.A.* § 775(b)(1)(E). For any protected employee with five or more years of service as of the effective date of the act, the allowance would continue until the employee reached the age of 65 and, in the case of a protected employee with less than five years of service, would continue for a period equal to the number of years of service. 45 *U.S.C.A.* § 775(c). The allowance would terminate upon the employee's death, retirement, resignation or

dismissal for cause. 45 *U.S.C.A.* § 775(c). Plaintiff received benefits pursuant to the act from July 1, 1977 until the applicable sections were repealed on August 1, 1981.[1]

Under the New Jersey Unemployment Compensation law, *N.J.S.A.* 43:21–1 *et seq.,* an unemployed individual is eligible to receive benefits with respect to any week only if it appears that:

> [w]ith respect to a base year as defined in subsection (c) of R.S. 43:21–19 the individual has established at least 20 base weeks as defined in subsection (t) of R.S. 43:21–19, or, in the alternative, has earned $2,200.00 or more in the individual's base year, except that with respect to benefit years commencing on or after January 1, 1978, an individual's base week wages in the base year shall include wages paid for previously uncovered services. [*N.J.S.A.* 43:21–4(e).]

A "base week" means "any calendar week of an individual's base year during which he earned in employment from an employer remuneration equal to not less than $30.00 . . ." *N.J.S.A.* 43:21–19(t). The statute further defines "remuneration" as "all compensation for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash." *N.J.S.A.* 43:21–19(p). Also relevant is the statutory definition of "employment": "Any service . . . in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied." *N.J.S.A.* 43:21–19(i)(1).

Our research discloses no reported case in New Jersey or in any other jurisdiction which has considered the relationship between the Regional Rail Reorganization Act and a state's unemployment compensation law.[2] Despite the paucity of au-

---

[1]Sections 771 through 780 of the act were repealed by Pub.L. No. 97–35, Title XI, § 1144(a)(1), 95 *Stat.* 669 (August 13, 1981).

[2]Only one reported case, a 1979 decision from the Appellate Court of Illinois, has considered the act and that was in the context of a divorce action. In *Pickell v. Pickell,* 76 *Ill.App.*3d 855, 32 *Ill.Dec.* 443, 395 *N.E.*2d 673, 675 (App.Ct.1979), the court held that a husband's monthly displacement allowance received pursuant to the act was too uncertain to be included in a calculation of his ability to pay maintenance payments to his wife and therefore that the lower court had not abused its discretion in denying the wife's request for maintenance.

thority on this point, we hold that a displacement allowance received pursuant to the act constitutes earned remuneration within the contemplation of our unemployment compensation law. First, the displacement allowance was created to effectuate the following goal: "A protected employee whose employment is governed by a collective bargaining agreement will not . . . be placed in a worse position with respect to *compensation,* fringe benefits, rules, working conditions, and rights and privileges pertaining thereto . . ." 45 *U.S.C.A.* § 775(a) (emphasis supplied). The definition of remuneration in our unemployment compensation act as "all *compensation* for personal services" is consistent with this goal. *N.J.S.A.* 43:21–19(p) (emphasis supplied). Secondly, the duration of the displacement allowance was based on the length of the protected employee's prior service. For example, for any employee with five or more years of service as of the effective date of the act, the allowance would continue until the employee reached the age of 65. Thus, it might be said that the allowance—like severance pay or vacation pay—is "remuneration for the services rendered during the period covered by the [collective bargaining] agreement." *See Owens v. Press Publishing Co.,* 20 *N.J.* 537, 546 (1956). Finally, and perhaps most importantly, the displacement allowance is subject to federal and state taxes. At the hearing before the Appeal Tribunal, plaintiff testified that federal and state taxes as well as state unemployment insurance were deducted from his monthly allowance and that the allowance was treated as earned income on his income tax return. This was consistent with the Railroad Retirement Tax Act, 26 *U.S.C.A.* § 3201 *et seq.* (1954). Such statutory treatment by the federal government of the allotment as earned income for taxation purposes virtually compels the conclusion that it be treated similarly for unemployment compensation purposes. *U.S. Const.,* Art. XVI. Based on these factors we conclude that the displacement allowance should be considered earned remuneration.

In summary, we hold that a monthly displacement allowance received pursuant to the Regional Rail Reorganization Act constitutes earned remuneration within the contemplation of the New Jersey Unemployment Compensation Law. Since plaintiff's displacement allowance totalled approximately $2,000 each month, his base year earnings exceeded the statutory required amount and he is therefore entitled to benefits. *See N.J.S.A.* 43:21–4(e). Accordingly, we reverse the decision of the Board of Review and remand for the purpose of entering an award of unemployment compensation benefits for plaintiff.

Reversed and remanded.